

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed February 18, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | **CASE NO 09-33151-bjh7** |
| **MICHAEL G. KINKAID** | § | |
| | § | **CHAPTER 7** |
| *Debtor* | § | **JUDGE BARBARA J. HOUSER** |
| ——————————————— | § | |
| | § | |
| **KATHY POSEY** | § | |
| *Plaintiff* | § | |
| | § | **ADVERSARY NO. 09-03229-bjh** |
| **v.** | § | |
| | § | |
| **MICHAEL G. KINKAID, RODNEY** | § | |
| **KINKAID, AND ROSANN** | § | |
| **KINKAID,** | § | |
| *Defendants* | § | |

---

Findings of Fact and Conclusions of Law

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this adversary proceeding plaintiff objects to (i) the dischargeability of her debt, and (ii) debtor receiving a discharge in the underlying bankruptcy case.  Moreover, plaintiff seeks a determination that her lien on certain real property owned by debtor is the first lien on the property.  Alternatively, to the extent that the Court concludes that defendants' lien on that real property is the senior lien, plaintiff seeks to have defendants' lien subordinated to her lien pursuant to § 510(c) of the Bankruptcy Code.

The Court tried this adversary proceeding on February 7 – 8, 2011.  To the extent not reiterated below, the Court adopts the parties' statement of stipulated facts from the Joint Pretrial Order.  The Court also makes the following findings of fact and conclusions of law.

I.

FINDINGS OF FACT

1.     Plaintiff Kathy Posey ("Plaintiff") is the ex-wife of debtor and is an individual resident of Loveland, Colorado.

2.     Defendant and Debtor Michael G. Kinkaid ("Debtor") is an individual resident of Kaufman County, Texas.

3.     Defendant Rodney Kinkaid ("Defendant") is Debtor's father and is an individual resident of Kaufman County, Texas.

4.     Defendant Rosann Kinkaid ("Defendant") is Debtor's mother and is an individual resident of Kaufman County, Texas.

5.     Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on May 22, 2009.  Debtor signed his schedules under penalty of perjury as to their completeness and

accuracy and filed them with this Court.

*The Sale of the Business and Property*

6.      Prior to marrying Debtor, Plaintiff worked for Irving Rental Center, Inc. ("IRC" or the "Business") with Debtor and Defendants.  At that time, Defendants owned the Business as a small family-operated firm leasing heavy and light building equipment to commercial builders and homeowners.

7.      Plaintiff and Debtor were married in 1987.

8.      In 1996, Plaintiff and Debtor decided to purchase the Business from Defendants in light of Defendants' age and their desire to no longer run the Business's day-to-day operations.

9.      The terms of the sale were memorialized in a Stock Purchase Agreement effective January 5, 1996 for the sale of the shares and transfer documents relating to the sale of the real property on which the Business was located at 735 W. Shady Grove Road, Irving, Texas 75060 (the Real Property).

10.     Since Plaintiff and Debtor did not have the financial means to purchase the Business outright, the parties negotiated a sale of the shares over a period of 15 years and the sale of the Real Property secured by a deed of trust in favor of Defendants.

11.     The specific terms of the Stock Purchase Agreement obligated Plaintiff and Debtor to purchase the shares of the Business for $450,000.00 under a Promissory Note (the "Stock Purchase Note") dated January 5, 1996.  Under the Stock Purchase Note, Plaintiff and Debtor were to make monthly payments of $3,558.27 for shares of stock for a term of 15 years.

12.     At the time the Stock Purchase Note was made, Defendants held 4,028 outstanding shares in the Business.  Pursuant to the Stock Purchase Agreement, for each full year that monthly

payments were timely made, Defendants would thereafter execute and transfer a stock certificate, denoting 269 shares, to either the name of Debtor or Plaintiff in alternating years, until the Stock Purchase Note was paid in full and all of the shares of stock in IRC were transferred to them.

13.     The Real Property was sold to Debtor and Plaintiff under the terms of a: (a) Warranty Deed dated December 5, 1996;  (b) Real Estate Lien Note dated December 5, 1996  with a principal balance of $250,000.00 at 5% interest; and (c) Deed of Trust dated December 5, 1996.

14.     The Warranty Deed transferred title to the Real Property to Debtor and Plaintiff upon the filing of same in the deed records in December, 1996.

15.     The Real Estate Lien Note memorialized the terms of the purchase of the Real Property and obligated Debtor and Plaintiff to make monthly payments of $1,976.98 to Defendants until the $250,000.00 was paid in full.

16.     Over the course of their marriage, Plaintiff and Debtor met their monthly obligations to Defendants and managed to (i) build some equity in the Real Estate, and (ii) receive shares under the terms of the Stock Purchase Agreement.

*The Divorce Proceeding*

17.     In 2000, Plaintiff filed for divorce in Cause Number 2000-61103-393 in the 393rd District Court of Denton County, Texas (the "Divorce Court").

18.     In the Divorce Court, Plaintiff sued Debtor, Defendants, and IRC for claims relating to alleged fraudulent transfers, breach of fiduciary duty and related claims, equitable reimbursement, shareholder oppression, alter-ego and conspiracy.  On cross-examination here, however, Plaintiff admitted that her claims against IRC and Defendants in the Divorce Court were fueled by her suspicions and little else – *i.e.*, she had no real evidence supporting those

claims.

19.     The divorce was completed by the entry of a Partial Mediated Settlement Agreement on April 17, 2002, which was ultimately superseded by an Agreed Final Decree of Divorce (the "Divorce Decree") rendered by Order of the Divorce Court on October 2, 2002.

20.     All of the parties in the divorce action – *i.e.*, Debtor, Plaintiff, IRC, and Defendants, agreed to the terms of the Divorce Decree as evidenced by their signatures on it.

21.     Upon the finalization of the Divorce Decree, Defendants provided their attorney the authority to execute the Divorce Decree.

22.     No party filed a motion for new trial or otherwise attempted to set aside the Divorce Decree.

23.     Pursuant to the terms of the Divorce Decree, Plaintiff executed an Assignment of Interest dated March 14, 2003, assigning to Debtor all of her right title and interest to all shares of stock in IRC.

24.     Pursuant to the terms of the Divorce Decree, Plaintiff executed a Special Warranty Deed dated March 24, 2003, conveying to Debtor all of her interests in the Real Property.

25.     Plaintiff fully performed her obligations under the Divorce Decree.

26.     As relevant here, the Divorce Decree further stipulated that Debtor would pay Plaintiff $215,074.99 with interest accruing at 8% per annum, payable in 108 monthly installments of $2,800.00 per month beginning May 1, 2002, and thereafter on the first day of each month until paid in full.

27.     To secure payment of this debt, Plaintiff was granted a deed of trust lien on the Real Property.

---

*Debtor owes Debts to Plaintiff and Defendants*

28.     Debtor made all payments to Plaintiff pursuant to the Divorce Decree through December 2008.

29.     Debtor failed to make monthly payments to Plaintiff after December 2008.

30.     Plaintiff sought enforcement of the Divorce Decree, and issued notice to Debtor that she intended to foreclose on the Real Property.

31.     Debtor also failed to make payments to Defendants.  Accordingly, Defendants also sought to foreclose on the Real Property.  Plaintiff was copied on the letter sent by Defendants' lawyer to Debtor advising him of his default and Defendants' intent to foreclose on the Real Property.

32.     On February 3, 2009, Plaintiff filed suit in state court to enforce her rights under the Divorce Decree.  Debtor and Defendants were named as parties in this suit.

33.     On May 18, 2009, Plaintiff filed an amended petition in the state court suit, requesting that the court enter a declaratory judgment holding that Plaintiff's lien(s) was superior to any interest claimed by Defendants.

34.     On May 18, 2009, the state court entered a temporary restraining order preventing Defendants from proceeding with their efforts to foreclose on the Real Property.

*The Bankruptcy Filing and Related Events*

35.     As found previously, Debtor filed this bankruptcy case on May 22, 2009.

36.     After Debtor's bankruptcy filing, Defendants' lawyer filed a UCC-1 with the Texas Secretary of State's office purporting to assert a security interest in the business personal property located at the business premises of IRC.

37.     There is no written security agreement granting Defendants a security interest in the

business personal property located at the business premises of IRC.

38.     IRC has reported Debtor as its sole shareholder on its tax returns in 2002–2006.  From 1996-2001, IRC reported Plaintiff and Debtor or Debtor alone as its 100% shareholder(s).

39.     Defendants have made several inconsistent statements regarding their ownership of shares in IRC since Debtor's bankruptcy filing.

*The Adversary Proceeding and Trial*

40.     In this adversary proceeding Plaintiff asks this Court to determine (i) the amount Debtor still owes her under the Divorce Decree, (ii) that this debt is not dischargeable in accordance with either 11 U.S.C. §§ 523(a)(5) or (a)(15), and (iii) that Debtor's discharge should be denied in accordance with either 11 U.S.C. §§ 727(a)(2) or (a)(5).  Moreover, Plaintiff seeks this Court's determination that she has a superior lien on the Real Property and an equitable lien on the personal property owned by IRC that she claims was transferred to Debtor pursuant to the Divorce Decree.  Finally, to the extent the Court concludes that Defendants' lien on the Real Property was not released or extinguished by the Divorce Decree, Plaintiff seeks to have that lien equitably subordinated to her lien on the Real Property in accordance with 11 U.S.C. § 510(c).

41.     Prior to trial, the Court heard cross-motions for summary judgment filed by the parties. As relevant here, the Court granted Plaintiff a partial summary judgment, concluding that the unpaid amounts Debtor owed her pursuant to the Divorce Decree were not dischargeable in Debtor's bankruptcy case in accordance with 11 U.S.C. § 523(a)(15).  However, finding that the summary judgment evidence raised a genuine issue of material fact as to the amount Debtor still owed her pursuant to the Divorce Decree, the Court was unable to liquidate her claim at that time.  Accordingly, that issue remained for determination at trial.

42.     Based upon the evidence presented at trial, the Court finds that Plaintiff is owed 28 installments of $2,800 or $78,400.  The Court has previously ruled this debt is not dischargeable in Debtor's bankruptcy case.

43.     At trial, Plaintiff elected not to proceed with her objections to Debtor's receipt of a discharge in his bankruptcy case.  Accordingly, the Court will only address Plaintiff's remaining claims.  Specifically, the Court must decide if Defendants agreed in the Divorce Decree to (i) transfer their remaining shares in IRC to Debtor, and/or (ii) release their lien on the Real Property or have it extinguished.  In addition, the Court must decide if IRC agreed in the Divorce Decree to have its business personal property transferred to Debtor and, if so, if Plaintiff was granted an equitable lien on that personal property.  Finally, if Defendants' lien on the Real Property was not extinguished or released pursuant to the Divorce Decree, the Court must decide if Plaintiff has proven her equitable subordination claim against them.

44.     Plaintiff incurred reasonable and necessary attorney fees in the amount of $36,700 in connection with her pursuit of this action and the state court enforcement action that was stayed by Debtor's bankruptcy filing.  Audiotape: Hearing conducted 2/7/11 at 4:21:14 – 4:21:21 (on file with Court).  Of that amount, Plaintiff's counsel apportioned $3,760 to the pursuit of the nondischargeability action.  Audiotape: Hearing conducted 2/8/11 at 11:14:10 – 11:14:27 (on file with Court).  Based upon the billing statements admitted into evidence at trial, the Court calculates that Plaintiff incurred attorney's fees and expenses of $7,298.22 in connection with the state court enforcement action that was stayed by Debtor's bankruptcy filing.  The balance of the attorney's fees and expenses, $25,641.78, relate to Plaintiff's pursuit of claims against Defendants and the determination of the amount Debtor still owes Plaintiff under the Divorce

Decree.  Audiotape: Hearing conducted 2/8/11 at 11:14:52 – 11:15:17 (on file with Court).

45.     To the extent that any finding of fact constitutes a conclusion of law, it shall be deemed a

conclusion of law.

II.

CONCLUSIONS OF LAW

1.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 1334 & 157(b).

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.     Venue is proper in this District.

4.     The starting point in the Court's analysis of the remaining trial issues is the Divorce

Decree.  The Divorce Decree must be interpreted as if it were a contract between the parties.

*Pate v. Pate*, 874 S.W.2d 186, 188 (Tex. App. 1994).  While no party alleged that the Divorce

Decree was ambiguous, and thus extrinsic evidence of the parties' intent was not admitted at

trial, it is fair to say that the Divorce Decree is not a model of clarity.  However, given the

parties' position that it is not ambiguous, the Court will construe the Divorce Decree from its

four corners as it must.  *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) ("Courts

interpreting unambiguous contracts are confined to the four corners of the document, and cannot

look to extrinsic evidence to create an ambiguity") (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d

726, 732-33 (Tex. 1982)).

5.     As relevant here, the Divorce Decree provides that

> The Court finds that the following is a just and right division of the parties'
> marital estate, having due regard for the rights of each party and the child of the
> marriage.
>      IT IS ORDERED AND DECREED that the husband, MICHAEL

KINAID, is awarded the following as his sole and separate property, and the wife
is divested of all right, title, interest, and claim in and to that property:

    H-1.     The following real property . . .

    C.       Subject to the deed of trust executed by husband in favor of wife,
            1.9689 acres, known as 735 West Shady Grove Road, Irving, Texas
            . . .

    H-11.    The business known as IRVING RENTAL CENTER, INC.,
            located at 735 West Shady Grove Road, Irving, Texas 75060
            including but not limited to all shares of stock owned or claimed by
            the parties; all furniture, fixtures, machinery, equipment, inventory,
            cash, accounts, goods, and supplies, all personal property used in
            connection with the operation of the business; and any and all
            rights and privileges, past, present, or future arising out of or in
            conjunction with the operation of such business.

Plaintiff's Exhibit 1 at pp. 33-34.  In addition, the Divorce Decree provides that Plaintiff "will

execute and tender a special warranty deed . . . for all real estate awarded to MICHAEL

KINKAID" and that Debtor "will execute and tender a deed of trust to secure assumption … for

all real estate awarded to MICHAEL KINKAID encumbered by a note secured by a deed of

trust."  *Id*. at 40.  Finally, the Divorce Decree provides that Plaintiff "shall execute all documents

necessary to transfer stock in Irving Rental Center, Inc. to MICHAEL KINKAID . . . ."  *Id*.

Plaintiff signed and delivered such documents, as did Debtor.

6.      Plaintiff argues that the effect of these provisions is to (i) extinguish Defendants' prior

lien on the Real Property (granted to them at the time of the sale of the Business to Debtor and

Plaintiff in 1996), (ii) grant her the sole lien on the Real Property, (iii) transfer Defendants'

remaining shares of stock in IRC under the Stock Purchase Agreement to Debtor, and (iv)

transfer the personal property assets of IRC to Debtor.

7.      The Court disagrees, as Plaintiff reads too much into these provisions.  First, the predicate

for these provisions is that the Divorce Court finds them to be a "just and right" division of "the

parties' marital estate."  Plaintiff's Exhibit 1 at p. 32.  Obviously, the only "parties" to the

---

"marital estate" were Plaintiff and Debtor.  So, these provisions simply allocate the "marital estate" between Plaintiff and Debtor.  Property that is not part of the "marital estate" cannot be, and was not, allocated between the "parties to the marital estate."  While the Real Property was part of the marital estate, the property interest held by Defendants in the Real Property – *i.e.*, their deed of trust lien -- was not.  Second, the fact that Plaintiff was granted a lien on the Real Property pursuant to the Divorce Decree and related documents does not, in and of itself, extinguish Defendants' prior lien on the Real Property.  In short, if Plaintiff's argument was correct and Defendants supposedly agreed to release their prior lien on the Real Property because of their signature on the Divorce Decree, the Divorce Decree should state, at a minimum, that Debtor was awarded the Real Property "subject *only* to the deed of trust lien executed by husband in favor of wife," which it does not say.  Of course, if Defendants had really agreed to release their lien on the Real Property, one would have expected the Divorce Decree to require them to execute such a document, as it required Plaintiff to execute a special warranty deed in favor of Debtor and Debtor to execute a note and deed of trust in favor of Plaintiff.  Similarly, while the stock in IRC owned by Plaintiff and Debtor pursuant to the Stock Purchase Agreement was property of the "marital estate," the stock that Defendants continued to own in IRC under the Stock Purchase Agreement was not property of the marital estate to be allocated pursuant to the Divorce Decree.  Absent a specific provision in the Divorce Decree requiring Defendants to assign their remaining shares to Debtor, the Court concludes that paragraph H-11 of the Divorce Decree simply allocated the shares "owned or claimed" by Plaintiff and Debtor during their marriage to Debtor.  *See* Plaintiff's Exhibit 1 at pp. 32-33.  Finally, the Court concludes that the personal property owned by IRC at the time of the divorce was not part of the "parties' marital

estate." Thus, while the language used in the Divorce Decree is arguably unclear, when construing the Divorce Decree as a whole, the Court concludes that IRC did not agree to transfer its personal property assets to Debtor pursuant to the Divorce Decree.

8.      Accordingly, the Court concludes that the Divorce Decree did not (i) extinguish Defendants' prior lien on the Real Property, (ii) grant Plaintiff the sole lien on the Real Property, (iii) transfer Defendants' remaining shares of stock in IRC under the Stock Purchase Agreement to Debtor, and (iv) transfer the personal property assets of IRC to Debtor.

9.      Because the Court has concluded that the personal property assets of IRC were not transferred to Debtor under the Divorce Decree, the Court does not need to address Plaintiff's contention that she received an equitable lien on those assets pursuant to the Divorce Decree.

10.     This leaves one last issue to be addressed – *i.e.*, Plaintiff's claim that Defendants' lien on the Real Property should be equitably subordinated to her lien pursuant to § 510(c) of the Bankruptcy Code, to which we now turn. The Fifth Circuit has addressed the circumstances under which equitable subordination is appropriate on numerous occasions. Specifically, in *In re SI Restructuring, Inc.*, 532 F.3d 355, 360-61 (5th Cir. 2008), the court stated:

> The Bankruptcy Code does not otherwise set forth the circumstances under which equitable subordination is appropriate; however, the case law has formulated a number of requirements to guide courts in their application of this remedy. This Court in *In re Mobile Steel Co.* articulated the widely quoted three-prong test for equitable subordination: (1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. *In re Mobile Steel Co.* adds an additional requirement, critical to the decision in this case: a claim should be subordinated only to the extent necessary to offset the harm which the debtor or its creditors have suffered as a result of the inequitable conduct.

11.     Plaintiff alleges three acts of inequitable conduct on Defendants' part. First, Plaintiff

alleges that Defendants colluded with Debtor regarding, among other things, the shares of stock they own in IRC. In essence, Plaintiff alleges, among other things, that (i) Defendants agreed in the Divorce Decree to transfer their remaining shares in IRC to Debtor, (ii) Defendants have not exercised any shareholder-type rights since the Divorce Decree was entered, thereby further proving that they no longer owned any such shares, (iii) Debtor initially claimed in his bankruptcy case that he owned 100% of the stock of IRC, and (iv) after his parents realized that they still owned stock in IRC, Debtor amended his schedules to agree with them. Second, Plaintiff alleges that Defendants filed a false UCC-1 on the business assets of IRC shortly after Debtor's bankruptcy case was filed, when they knew that (i) they did not have a security agreement granting them a lien on those assets, and (ii) Debtor's bankruptcy case had been filed. Third, when Defendants sent Debtor a default letter and began to initiate their foreclosure on the Real Property, they inflated the amount owing to them.

12.     The Court will address each alleged act of inequitable conduct separately. After carefully considering the evidence offered at trial and the demeanor of all of the witnesses, including Debtor, Defendants, and Plaintiff, the Court finds that Debtor did not collude with Defendants in any manner. Defendants are an elderly couple who love their son and hope to get paid what is owed to them. While no specific evidence was offered regarding their educational background, they do not appear to be very sophisticated individuals. Certainly, they are bright and were successful in their business lives in that they were able to build up a successful business – *i.e.*, IRC, which they then sold to their son, Debtor, and their then daughter-in-law, Plaintiff. There is no question that the parties – including Plaintiff – were all confused with respect to certain of their legal rights under the Stock Purchase Agreement. While Defendants continued to be

shareholders of IRC until they were paid in full, Plaintiff and Debtor acted as if they were the sole shareholders following the execution of the Stock Purchase Agreement.  For example, Plaintiff and Debtor claimed to be the 100% shareholders of IRC when they filed their joint tax returns; the minutes of annual shareholder meetings of IRC also state that they are the only shareholders.  And, following the divorce, Debtor continued to file tax returns stating that he was the 100% shareholder of IRC.  However, that is legally incorrect.  Defendants continued to own shares of stock in IRC until the purchase price for the Business was fully paid to them, which has not yet occurred.  Confusion or mistakes by the parties – including Plaintiff – do not amount to collusion.  As Plaintiff herself admitted on cross-examination, she has no real evidence that Debtor colluded with his parents, she just continues to be suspicious of them.

13.     The Court is also satisfied that Defendants instructed their state court lawyer to file the UCC-1 on the personal property assets of IRC based upon their misunderstanding of their legal rights.  After their bankruptcy counsel more fully investigated the issues, Defendants withdrew their motion for relief from stay and have stipulated here that they do not have a lien on any of that personal property.

14.     Defendants could not explain the overstated demand letter sent to Debtor prepetition. Rodney Kinkaid freely admitted that the amount claimed to be due in that letter was wrong when asked about it by Plaintiff's counsel at trial.  And, while Plaintiff's counsel argued that all of these "mistakes" evidenced fraud or collusion, the Court is hard-pressed to find them more than what they were – mistakes.

15.     There is no question that Defendants want to get paid and believe that they should get paid before Plaintiff does.  However, while Plaintiff wants Defendants' desire to get paid ahead

of her to be found "inequitable," the Court cannot find it so.  Defendants have a first lien on the

Real Property and they are legally entitled to protect themselves and their collateral, just as

Plaintiff can if she chooses.  In short, the Court concludes that none of the acts complained of by

Plaintiff constitutes inequitable conduct.

16.     However, even assuming that such acts did constitute inequitable conduct, Plaintiff failed

to prove that the misconduct resulted in injury to Debtor's creditors or conferred an unfair

advantage on Defendants.  The Trustee is fully aware of the allegations made by Plaintiff

regarding the assets and stock of IRC.  If Plaintiff is correct, Debtor owns 100% of IRC and all

of its personal property.  Notwithstanding these allegations, the Chapter 7 Trustee (who would

own those assets if Plaintiff is correct) has not sought the turnover of any of those assets.  In fact,

the Trustee issued his no-asset report long ago.  The Court can only conclude that the Trustee

thought as little of Plaintiff's claims as does this Court after hearing all of the evidence at trial.

17.     IRC is no longer in business.  It has not operated since December 2009.  Its personal

property has been sitting out in the elements since that time.  From the Court's perspective,

neither the stock of IRC nor its assets appear to have any significant value that could be realized

by Debtor's creditors.  Thus, even assuming that Defendants' conduct regarding their IRC stock

constitutes "inequitable conduct," no creditor of Debtor, including Plaintiff, has been injured by

that conduct.  Nor did Defendants' conduct confer an unfair advantage on them.

18.     Similarly, the filing of the false UCC-1 did not injure any of Debtor's creditors or confer

an unfair advantage on Defendants.  They withdrew their request for relief from the automatic

stay and have stipulated that they have no lien or security interest in that property.  Moreover, the

Court has found that property to be property of IRC not Debtor.  If any creditor was injured by

---

the improper filing (and no one was), it would have been IRC's creditors not Debtor's creditors.

19.     The overstated demand letter did not injure any of Debtor's creditors either. Moreover, it did not confer an unfair advantage on Defendants. They have not yet foreclosed their lien on the Real Property and if they do foreclose it in the future, Plaintiff will be free to protect herself from a wrongful foreclosure should one occur.

20.     For all of these reasons, the Court concludes that Plaintiff failed to prove her claim for equitable subordination of Defendants' lien on the Real Property.

21.     Finally, Plaintiff seeks to recover the attorney's fees and expenses she incurred in connection with (i) this adversary proceeding, and (ii) the state court enforcement action that was stayed by Debtor's bankruptcy filing prior to the entry of a judgment against Debtor. Under the American rule, "each party to a lawsuit must bear his or her own costs and the prevailing litigant cannot collect attorney fees from the losing litigant as a general rule." *In re Fulton*, 236 B.R. 626, 632 (Bankr. E.D. Tex. 1999) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)). But there are exceptions to the rule that allow a recovery of attorney's fees when, as relevant here, "a provision in a contract allows them" or "a statute authorizes them." *Id*. "The Bankruptcy Code, likewise, recognizes that attorney's fees incurred in litigating dischargeability issues are generally not recoverable in the absence of a contractual or statutory provision." *In re Nangle,* 281 B.R. 654, 657 (B.A.P. 8th Cir. 2002).

22.     Here, the Divorce Decree does not include a provision entitling Plaintiff to a recovery a of attorney's fees. Thus, Plaintiff seeks to recover her attorney's fees pursuant to the Texas Civil Practice & Remedies Code § 38.001 and Texas Family Code § 9.014. Section 38.001 of the Texas Civil Practice & Remedies Code provides for the recovery of attorney's fees by a

prevailing party on a breach of contract claim. As held by the Texas Supreme Court in *Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997), "[t]o recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." And, as noted previously, "the law of contracts governs marital property agreements even when incorporated into divorce decrees." *Pate*, 874 S.W.2d at 288. Thus, a breach of the Divorce Decree is tantamount to a breach of contract, for which attorney's fees may be awarded under Texas Civil Practice & Remedies Code § 38.001.

23.     Moreover, Texas Family Code § 9.014 permits the recovery of reasonable and necessary attorney's fees incurred in enforcing obligations arising under a final decree of divorce. Specifically, § 9.014 provides that "[t]he court may award reasonable attorney's fees in a proceeding under this subchapter." Tex. Fam. Code Ann. § 9.014 (Vernon 2006). Under § 9.010 of the statute, "[i]f a party did not receive payments of money as awarded in the decree of divorce or annulment, the court may render judgment against a defaulting party for the amount of unpaid payments to which the party is entitled." *Id.* at § 9.010.

24.     Applying these legal principles here, the Court first concludes that Plaintiff may not recover attorney's fees from Defendants for at least two reasons. First, she did not seek to recover her attorney's fees from them in her Third Amended Complaint. Second, Plaintiff has not prevailed on any of her claims against them.

25.     As it relates to Debtor, in her Third Amended Complaint Plaintiff asks this Court to (i) determine the amounts owing to her under the Divorce Decree, *see* Third Amended Complaint, p. 18 (Prayer for Relief ¶ A), (ii) determine that those amounts are not dischargeable in Debtor's bankruptcy case in accordance with §§ 523(a)(5) or (a)(15) of the Bankruptcy Code, *id.* at pp. 8-

9, (iii) determine that Debtor is not entitled to receive a discharge in his bankruptcy case in accordance with §§ 727(a)(2) or (a)(5) of the Bankruptcy Code, *id.* at pp. 9-10, and (iv) enter a judgment against Debtor for not less than $25,000 of attorney's fees, *id.* at p. 18 (Prayer for Relief ¶ B).

26.    This Court will next analyze Plaintiff's right to recover attorney's fees as it relates to each pled claim.  Regarding her request that the Court liquidate the amount still owing to her pursuant to the Divorce Decree, the Court concludes that Plaintiff is legally entitled to recover the fees she incurred here in proving up the extent of Debtor's payment default in accordance with §§ 9.010 and 9.014 of the Texas Family Code.  The Court has found that Plaintiff incurred $7,298.22 of attorney's fees and expenses in connection with the stayed state court enforcement action and $29,401.78 of attorney's fees and expenses in connection with the proceedings here, including the $3,760 in fees Plaintiff's counsel allocated to pursuing the non-dischargeability action in his trial testimony.  Of that $29,401.78, Plaintiff is only legally entitled to recover the fees she incurred enforcing the Divorce Decree against Debtor.

27.    The problem for Plaintiff is that she failed to put on evidence at trial allocating these attorney's fees between her claims against Debtor and Defendants or, more importantly, between the recoverable and non-recoverable claims.  Nor has the Court been able to allocate the fees based on her counsel's timesheets.  The general rule in Texas requires allocation of attorney's fees when a party raises some claims on which fees are recoverable and some on which they are not.  *Reinhardt v. Walker*, No. 14-07-00304-CV, 2008 WL 2390482, at *6 (Tex. App. June 12, 2008) (refusing to award attorney's fees for failure to allocate) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006)); *see also Penhollow Custom Homes, LLC v. Kim*, 320

---

S.W.3d 366, 374 (Tex. App. 2010) ("A party seeking attorneys' fees must show that the fees were incurred on a claim that allows recovery of such fees, and thus is ordinarily required to segregate fees incurred on claims allowing recovery of fees from those that do not."). In *Tony Gullo Motors*, the Texas Supreme Court held that "if any attorneys' fees relate solely to a claim for which such fees are unrecoverable, the claimant must segregate recoverable from unrecoverable fees." 212 S.W.3d at 313-14. This rule applies even when the claims involve common or intertwined facts because counsel "will normally still be required to draft pleadings for the separate causes and may also be required to perform differing research and discovery, among other matters." *Reinhardt*, 2008 WL 2390482, at *6. "Counsel is not required to keep separate records documenting the exact amount of time spent pleading one claim versus another; rather, counsel could simply state an opinion as to the percentage of the total time that would have been spent had the claim for which fees are not recoverable not been part of the case." *Id.*

28.      Here, as was the case in *Reinhardt*, "it is evident that each claim required, at a minimum, drafting separate portions of the various pleadings. Each claim may have required separate legal research and possibly separate discovery requests and responses as well." *Id.* Yet, Plaintiff's counsel did not offer an opinion, or any other evidence, about the percentage of time spent on the recoverable claim versus the non-recoverable claims. Plaintiff's counsel simply testified that the total amount of attorney's fees Plaintiff sought was $36,700. Audiotape: Hearing conducted 2/7/11 at 4:21:14 – 4:21:21 (on file with Court). On cross-examination, Plaintiff's counsel allocated $3,760 to pursuit of the non-dischargeablility claims. Audiotape: Hearing conducted 2/8/11 at 11:14:10 – 11:14:27 (on file with Court). Plaintiff's counsel then allocated the balance of the attorney's fees to "the enforcement … the equitable subrogation, the enforcement of the

property division under the divorce decree …." Audiotape: Hearing conducted 2/8/11 at 11:14:52 – 11:15:17 (on file with Court). But, that is where the evidence of allocation ends. Thus, although Plaintiff is legally entitled to recover the fees she incurred enforcing the Divorce Decree against Debtor here, the Plaintiff's failure to allocate the fees related to that that claim precludes the Court from awarding any fees to her.

29.      Regarding Plaintiff's request that the Court determine that Debtor's debt to her pursuant to the Divorce Decree is non-dischargeable, the Court concludes that Plaintiff is not entitled to recover the $3,760 in fees she incurred in litigating this issue. Generally, bankruptcy courts have refused to award attorney's fees in dischargeability litigation because there is no specific provision of the Bankruptcy Code authorizing such awards. *See, e.g., Colbert v. Colbert (In re Colbert)*, 185 B.R. 247 (Bankr. M.D. Tenn. 1995); *Wisely v. Beattie (In re Beattie)*, 150 B.R. 699, 704 (Bankr. S.D. Ill. 1993). According to the *Colbert* court, "[t]he general rule is that, absent a federal statute or enforceable contract providing for fees, each party must bear his or her own attorney fees. The only authorization for fees in dischargeability actions appears in § 523(d), which permits fees to prevailing debtors . . . where the creditor's position was not substantially justified. Under the well-established principle of statutory interpretation *expressio unius est exclusion alterius*, the inclusion of § 523(d) indicates a congressional intent that each party bear his or her own litigation costs in all other dischargeability actions." *Colbert*, 185 B.R. at 248 (citations omitted); s*ee also In re Barbre*, 91 B.R. 846, 849 (Bankr. S.D. Ill. 1988) ("Congress intended each party to bear his or her own costs of litigation under § 523, except in cases under § 523(d) where an award of attorney fees is expressly allowed."); *but see Busch v. Hancock (In re Busch)*, 369 B.R. 614 (B.A.P. 8th Cir. 2007).

30.     As noted previously, Plaintiff withdrew her request that the Court deny Debtor's discharge. Accordingly, the Court need not consider a request for attorney's fees with respect to Plaintiff's objection to Debtor's discharge.

31.     The attorney's fees Plaintiff incurred in connection with the state court enforcement action were not reduced to judgment prior to Debtor's bankruptcy filing. In fact, Debtor filed his bankruptcy case shortly after Plaintiff obtained a temporary restraining order preventing Defendants from proceeding with their efforts to foreclose on the Real Property. As the *Busch* court held when faced with a similar request:

> this court does not have first hand knowledge of the proceedings before the state court. Therefore, it is not in the best position to determine whether those fees are legitimate and reasonable, or whether Ex-Wife was the substantially prevailing party in those proceedings. Ex-Wife must seek an award of those fees from the state court. To the extent necessary to accomplish this task, the bankruptcy court can modify the automatic stay to allow her to at least seek those fees. Additionally, should the state court award attorney's fees, it can be permitted to exercise its concurrent jurisdiction to determine whether Debtor's obligation is ... nondischargeable . . . .

*Busch*, 369 B.R. at 626-27.

32.     Accordingly, this Court is unable to award Plaintiff the fees she incurred in connection with the state court action that was ultimately stayed by Debtor's bankruptcy filing. If Plaintiff wishes to seek a recovery of those fees, Plaintiff can ask this Court to modify either the automatic stay or the discharge injunction, as applicable, and pursue a recovery of those fees from the state court. And, as the *Busch* court observed, if the state court awards Plaintiff any such fees, the state court can also exercise its concurrent jurisdiction to determine whether Debtor's obligation to pay those incremental fees to her is nondischargeable under 11 U.S.C. § 523(a)(15). *See also, Lewis v. Lewis (In re Lewis)*, 423 B.R. 742, 755 (Bankr. W.D. Mich. 2010)

(holding that state courts have concurrent jurisdiction with bankruptcy court over nondischargeable debt determinations under § 523(a)(15)).

33.    In summary, Debtor still owes Plaintiff $78,400 pursuant to the Divorce Decree.  This amount is nondischargeable pursuant to 11 U.S.C. § 523(a)(15).  But, on this evidentiary record, Plaintiff is not entitled to further relief.

34.    To the extent that any conclusion of law constitutes a finding of fact, it shall be deemed a finding of fact.

### ### End of Findings and Conclusions ###